# United States District Court
# Eastern District of Wisconsin
# Milwaukee Division

| | |
|---|---|
| **John Swaffer, Jr.** <br> *Plaintiff*, <br><br> v. <br><br> **David Deininger**, in his official capacity as Chair of the Government Accountability Board; **Thomas Cane**, in this official capacity as Vice Chair of the Government Accountability Board; **Gerald Nichol**, in his official capacity as Secretary of the Government Accountability Board; **Michael Brennan**, in his official capacity as a member of the Government Accountability Board, **William Eich**, in his official capacity as a member of the Government Accountability Board; **James Mohr**, in his official capacity as a member of the Government Accountability Board; **Phillip A. Koss**, in his official capacity as District Attorney, <br><br> *Defendants*. | *Civil Action No.* _____ <br><br> Verified Complaint |

Plaintiff John Swaffer, Jr. complains as follows:

**Introduction**

1. This is a civil action for declaratory and injunctive relief arising under the First and Fourteenth Amendments to the United States Constitution. It concerns the constitutionality of the organizational, reporting, disclosure and disclaimer requirements imposed on individuals by Wisconsin's election law scheme.

2. The challenged laws place severe burdens on core First Amendment-protected political speech and are not narrowly tailored to any compelling government interest. Specifically, (1) Wis. Stat. § 11.23's PAC-style requirements are unconstitutional in the context of individuals participating in ballot measure advocacy and (2) Wisconsin may not compel identification disclaimers on the communications of individuals participating in ballot referendum advocacy as required by Wis. Stat. 11.30 and Wis. Admin. Code § ElBd 1.655.

## Jurisdiction and Venue

3. This Court has jurisdiction over this civil action arising under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the Constitution of the United States of America. 28 U.S.C. §§ 1331, 2201.

4. Venue is proper. 28 U.S.C. § 1391(e).

## Parties

5. Plaintiff John Swaffer, Jr., an individual, is a resident of Walworth County residing at W8235 Clover Valley Rd., Whitewater, WI 53190.

6. Defendants David Deininger (Chair), Thomas Cane (Vice Chair), Gerald Nichol (Secretary), Michael Brennan, William Eich, and James Mohr are members of the Wisconsin Government Accountability Board ("GAB") and are sued in their official capacities. The GAB, which assumed responsibility on January 10, 2008, was created to replace the former State Elections Board and State Ethics Board. *See* Website of Government Accountability Board, *at* http://elections.state.wi.us/category.asp?linkcatid=1997&linkid=170. The GAB has authority to commence and execute investigations for violations of Wis. Stat. Chap. 11, and to bring civil enforcement actions for any such violation. 2007 Wisconsin Act 1, available at

**Verified Complaint for Declaratory
and Injunctive Relief**                              -2-

http://www.legis.state.wi.us/2007/data/acts/07Act1.pdf. The GAB may refer matters to a District Attorney for criminal prosecution, *Id.* at §5.05. The GAB also has authority to refer matters to the Attorney General for prosecution under certain circumstances. *Id.* Defendant Phillip A. Koss, sued in his official capacity as District Attorney of Walworth County, has independent enforcement authority. Wis. Stat. § 11.60(4).

### Facts

7. On April 1, 2008, the town of Whitewater, located in Walworth County Wisconsin, will vote on three local referendum questions (the "Referendums") that would permit liquor sales and the issuance of liquor licenses in Whitewater. Whitewater is currently a "dry" town and has been so since 1977.

8. Plaintiff Swaffer opposes the Referendums and believes many Whitewater residents are unaware of the Referendums. Therefore, Swaffer wants to send post cards ("the Mailer") bringing awareness to the Referendums and expressly advocating a vote against them. A true and correct copy of the Mailer is attached as Exhibit A. The Mailer will be sent to Whitewater residents. Swaffer also wants to make yard signs (the "Signs") that will urge residents to vote no on the Referendums. Swaffer believes that if Whitewater residents are made aware of the Referendums they will overwhelmingly defeat them.

9. Swaffer will make a "disbursement" as defined by Wis. Stat. § 11.01(7) of over $25 (a statutory trigger) to print and distribute the Mailer and Signs. Swaffer anticipates the total cost to be between $200 and $300. Swaffer will accept a contribution of over $100 (statutory trigger) to help offset the costs of printing and distributing the Mailer and Signs. The source of this contribution is an

**Verified Complaint for Declaratory
and Injunctive Relief**                         -3-

individual also opposed to the Referendums who is ready, willing and able to contribute $120 to Swaffer for this purpose.

10. Swaffer does not want to comply with the registration and reporting requirements triggered by Wis. Stat. § 11.23 because he believes they violate his First Amendment rights.

11. Swaffer does not want to comply with the disclaimer requirement of Wis. Stat. § 11.30 because he believes it violates his First Amendment rights.

12. Swaffer fears both civil and criminal prosecution if he produces and distributes the Mailer and Signs without complying with the requirements of Wis. Stat. § 11.23 and Wis. Stat. § 11.30. Swaffer's fear of enforcement stems in part from his awareness of the investigation of his friend Charles Hatchett who participated in substantially similar activities in 2006 in regard to a Whitewater referendum on the same subject. *See Declaration of Charles G. Hatchett*, Exhibit B.

13. Swaffer fears retaliation if forced to include the disclaimer on his Mailer and Signs because the Referendums are controversial in the Whitewater community and he believes many of the Referendums' supporters are particularly influential and powerful members of the community. Swaffer's fear of retaliation stems in part from his awareness of harassment experienced by his friend Scott Hatchett. *See Declaration of Scott Hatchett*, Exhibit C.

14. Swaffer wants to send the Mailer and distribute the Signs no later than March 25, 2008, a week prior to the election. Swaffer believes that this is the most effective timing for his advocacy.

15. Swaffer has not made any "disbursements," "contributions," or incurred "obligations," as defined for purposes of Wis. Stat. § 11.23, in the current calender year. Swaffer would like to participate in similar activity in the future should a referendum of interest to him be placed on the ballot.

**Verified Complaint for Declaratory
and Injunctive Relief**               -4-

16. Swaffer seeks injunctive relief allowing him to produce and distribute the Mailer and Signs without complying with the burdensome requirements triggered by Wis. Stat. § 11.23, and without including the compelled disclaimer of Wis. Stat. § 11.30; Wis. Admin. Code § ElBd 1.655.

## Count 1 - Individuals Treated as PAC's

17. Plaintiff realleges and incorporates by reference all the allegations contained in all of the proceeding paragraphs.

18. Plaintiff Swaffer challenges the reporting and disclosure requirements imposed on individuals participating in ballot referendum advocacy by Wis. Stat. § 11.23, which states:

> 1) Any group or individual may promote or oppose a particular vote at any referendum in this state. Before making disbursements, receiving contributions or incurring obligations in excess of $25 in the aggregate in a calendar year for such purposes, the group or individual shall file a registration statement under s. 11.05(1), (2) or (2r). In the case of a group the name and mailing address of each of its officers shall be given in the statement. Every group and every individual under this section shall designate a campaign depository account under s. 11.14. Every group shall appoint a treasurer, who may delegate authority but is jointly responsible for the actions of his or her authorized designee for purposes of civil liability under this chapter. The appropriate filing officer shall be notified by a group of any change in its treasurer within 10 days of the change under s. 11.05(5). The treasurer of a group shall certify the correctness of each statement or report submitted by it under this chapter.
>
> (2) Any anonymous contribution exceeding $10 received by an individual or group treasurer may not be used or expended. The contribution shall be donated to the common school fund or to any charitable organization at the option of the treasurer.
>
> (3) All contributions, disbursements and incurred obligations exceeding $10 shall be recorded by the group treasurer or the individual. He or she shall maintain such records in an organized and legible manner, for not less than 3 years after the date of a referendum in which the group or individual participates. If a report is submitted under s. 11.19(1), the records may be transferred to a continuing group or to the appropriate filing officer for retention. Records shall include the information required under s. 11.06(1).
>
> (4) Each group or individual shall file periodic reports as provided in ss. 11.06, 11.19 and 11.20. Every individual acting for the purpose of influencing the outcome of a referendum shall be deemed his or her own treasurer. No disbursement may be made or

**Verified Complaint for Declaratory**
**and Injunctive Relief**                      -5-

obligation incurred by or on behalf of a group without the authorization of the treasurer or the treasurer's designated agents. No contribution may be accepted and no disbursement may be made or obligation incurred by any group at a time when there is a vacancy in the office of treasurer.

19. "Disbursement" is defined to include "a purchase, payment, distribution, loan, advance, deposit or gift of money or anything of value . . . made for political purposes." Wis. Stat. § 11.01(7)(a). "Political purposes" include activities done "for the purpose of influencing a particular vote at a referendum." Wis. Stat. § 11.01(16).

20. Registration statements required under Wis. Stat. § 11.05 must include the name and principal office of the individual, appoint the individual treasurer, name the financial institution and account number for a campaign depository account, and the referendum and whether it is supported or opposed.

21. Individuals must record "[a]ll contributions, disbursements and incurred obligations exceeding $10," and such records must be maintained "in an organized and legible manner, for not less than 3 years after the date of a referendum in which . . . the individual participates." Wis. Stat. § 11.23(3). Individual registrants must file pre-primary reports, pre-election reports, and "[c]ontinuing reports." Wis. Stat. §§ 11.06, 11.20. These reports must contain detailed information about expenditures and contributions, including any contributors name and address, and the "name and address of the principal place of employment" of any contributor whose contributions exceed $100. Wis. Stat. § 11.06(1)(b). Individuals must file termination reports if the individual determines that "contributions will no longer be received nor disbursements made during a calender year." Wis. Stat. § 11.19. These termination reports "shall indicate the disposition of residual funds" which may be used for political purposes, returned to any contributor, or donated to charity. *Id.*

**Verified Complaint for Declaratory
and Injunctive Relief**                              -6-

22. The PAC-like requirements imposed on individuals by Wis. Stat. § 11.23 are unconstitutional. The Supreme Court has held that PAC-like burdens may be imposed only on entities "under the control of a candidate or the major purpose of which is the nomination or election of a candidate." *Buckley v. Valeo*, 424 U.S. 1, 79 (1976).

23. In the context of speech involving ballot referendums § 11.23's imposition of PAC-like burdens on individuals is not narrowly tailored to any state interest and is thus unconstitutional. *See e.g. Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999) (*Buckley II*).

24. Section 11.23 is therefore unconstitutional facially and as applied to Swaffer's intended activities.

### Count II - Attribution of Political Disbursements

25. Plaintiff Swaffer realleges and incorporates by reference all the allegations contained in all of the preceding paragraphs.

26. Swaffer challenges the constitutionality of Wisconsin's compelled disclaimer requirement, at Wash. Stat. § 11.30, and Wis. Admin. Code § ElBd 1.655. Section 11.30 states:

> 2)(a) The source of every printed advertisement, billboard, handbill, sample ballot, television or radio advertisement or other communication which is paid for by or through any contribution, disbursement or incurred obligation shall clearly appear thereon.
> ....
> (c) Every such communication which is directly paid for or reimbursed by an individual, including a candidate without a personal campaign committee who is serving as his or her own treasurer, or for which an individual assumes responsibility, whether by the acceptance of a contribution or by the making of a disbursement, shall be identified by the words "Paid for by" followed by the name of the candidate or other individual making the payment or reimbursement or assuming responsibility for the communication. No abbreviation may be used in identifying the name of a committee or group under this paragraph.

**Verified Complaint for Declaratory
and Injunctive Relief**               -7-

27. Compelled disclaimers imposed on individuals participating in express advocacy concerning a ballot referendum violates the First Amendment. *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995).

28. Wash. Stat. § 11.30 and Wis. Admin. Code § ElBd 1.655 are unconstitutional facially and as applied to Swaffer's intended activity. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

**Prayer for Relief**

WHEREFORE, Plaintiff prays for the following relief:

(1) Declare Wis. Stat. §§ 11.23, 11.30, and Wis. Admin. Code § ElBd 1.655 unconstitutional in violation of the First and Fourteenth Amendments to the United States Constitution;

(2) grant preliminary and permanent injunctive relief enjoining defendants from enforcing the challenged statutes and regulations;

(3) grant Plaintiff's costs and attorney's fees pursuant to 42 U.S.C. § 1988 and any other applicable authority; and

(4) any other such other relief as may be just and equitable.

Dated: March 10, 2008

**Verified Complaint for Declaratory and Injunctive Relief** -8-

Respectfully submitted,

James Bopp, Jr., Ind. #2838-84
Jeffrey P. Gallant, Va. #46876
Clayton J. Callen, Mo. #59885      /s/ Michael D. Dean
Bopp, Coleson & Bostrom            Michael D. Dean,
1 South Sixth Street               20975 Swenson Drive
Terre Haute, IN 47807-3510         Suite 125
812/232-2434 telephone             Waukesha, WI 53186
812/234-3685 facsimile             262/798-8044 telephone
*Lead Counsel for Plaintiff*       262/798-8045 facsimile
                                   *Local Counsel for Plaintiff*

**Verified Complaint for Declaratory
and Injunctive Relief**              -9-

## Verification

I, John Swaffer, Jr., declare as follows:

1. I have personal knowledge of the facts set out in the foregoing *Complaint*, and if called upon to testify I would competently testify as to the matters stated herein.

2. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Complaint* concerning myself and my intended activities are true and correct. Executed on March 7, 2008.

Dated: March 7 , 2008

                                        /s/ John Swaffer, Jr,
                                        John Swaffer, Jr.

**Verified Complaint for Declaratory
and Injunctive Relief**

**[Exhibit A - The Mailer]**

**Side A**

Town of Whitewater Residents:
Vote NO on all liquor questions on April 1,2008

**Side B**

VOTE NO ON ALL LIQUOR SALES REFERENDUMS APRIL 1
MAINTAIN PROPERTY VALUES
HOLD DOWN PROPERTY TAXES
SAVE ON LAW ENFORCEMENT
PRESERVE THE INTEGRITY OF OUR TOWN
VOTE NO TO ALL LIQUOR QUESTIONS

**Verified Complaint for Declaratory
and Injunctive Relief**                          -11-

**[Exhibit B – Declaration of Charles G. Hatchett]**

1. Charles G. Hatchett states:

2. I am an adult citizen and elector of the state of Wisconsin, residing in the Town of Whitewater at N7541 W. Lakeshore Drive, Whitewater, WI 53190. I am registered to vote at the Town Hall, Town of Whitewater.

3. I moved to the Town of Whitewater with my family in 1977, and served as director of Joy Baptist Youth Camp on Whitewater Lake until my retirement last year. "Camp Joy" is a Christian youth camp that has served tens of thousands of young people over the years.

4. When we first moved to the Whitewater area, the town was "dry." A short time later, however, the Town Board issued two liquor licenses for locations within the town. Then town Chairman Charlie Cruse stated that the town had the right to issue licenses because the town records had been destroyed in a fire so there were no ordinances prohibiting it from doing so. The Board did not post public notices or conduct hearings, it simply issued the licenses.

5. Town residents reacted strongly when word got out. They hired an attorney, had the licenses rescinded, and placed a referendum on the ballot at the next election that the Town should be free from liquor sales. The people approved the referendum overwhelmingly, and the Town has continued to be "dry" ever since.

6. During the 2006 spring election, three referendums were added to the ballot to approve the sale of alcoholic beverages in the Town. However, there was very little publicity about the referendums and few contested offices, so few electors knew about them and there was little incentive to turn out to vote.

**Verified Complaint for Declaratory
and Injunctive Relief**                                -12-

7. The election was to be held Tuesday, April 4, 2006. On Monday, March 27, 2006, my son Scott called and told me that a member of the Town Board came to see him at the Camp and told him that he (the Board member) did not feel that most of the town residents were aware that the referendums were on the ballot.

8. I was concerned about the referendums, and also concerned that if I did not know about them, it was not likely that others in the community knew about them either. I decided to get word out so called the local advertising newsletter ("Good Morning") to see if it was possible to get an ad in the paper. I was told that there wasn't enough time to do so before the election.

9. I then decided to do a mailing and called a local realtor about obtaining a list of town residents and mailing addresses. I also called the Town Clerk asking for that information, but she was not available.

10. I eventually decided to send a post card rather than a letter because it would be easier and less expensive. I then wrote, photocopied, and mailed a simple post card asking people to vote "no" on the referendums.

11. I did not sign the card because of my long association with Camp Joy. I did the mailing as a private citizen, and did not want repercussions for the Camp, which needs the Town Board's approval for construction and improvements to the Camp facilities.

12. I believe I purchased a total of 524 stamps for the mailing. I paid all costs associated with the mailing personally including cards, printing and postage. I offered to pay the realtor for the residents' names and addresses, but he declined.

13. Historically, the town has been overwhelmingly opposed to the sale of alcoholic beverages of any kind. I believed that political insiders were trying to avoid the will of the people by placing the

**Verified Complaint for Declaratory
and Injunctive Relief**                          -13-

referendums on the ballot "quietly," and believed it was my responsibility and duty as a citizen, town resident, and elector to inform the residents of the referendums and encourage them to vote against them.

14. I believed strongly that the sale of alcohol in town was not in the best interests of the community, and urged my fellow citizens to vote "no" for that reason. I was solely responsible for the postcard, and mailed it as a private citizen, believing my neighbors should be informed and that I was exercising my First Amendment rights and responsibilities.

15. The mailing was successful, and the referendums were defeated by a substantial margin.

16. However, the day of the election, a sheriff's deputy came to see me. He was menacing and demanded to know whether I was responsible for the post card mailing. It was apparent it was not a "friendly" visit, so I declined to answer and he left.

17. Shortly afterwards, Scott told me that two plainclothes deputies had come to the camp and that he had told them I was involved after they threatened him with possible criminal charges if he refused to cooperate.

18. Until the visits by the police officers, I was unaware of any law controlling whether I could contact my neighbors and town residents about a political matter.

19. I contacted attorneys who eventually convinced the district attorney that I did not know about the law and did not intend to violate it. The district attorney eventually decided not to prosecute me for the mailing.

**Verified Complaint for Declaratory
and Injunctive Relief** -14-

20. Several weeks ago, Scott told me that the Town chairman had come the Camp, interrupted a staff meeting, and told Scott that the referendums would be on the ballot again April 1, 2008, and that they didn't want any opposition.

## Verification

Declaration of Charles G. Hatchett in Lieu of Affidavit pursuant to 28 U.S.C. § 1746:

I declare, under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Dated this 7th of March, 2008.

              __/s/ Charles G. Hatchett_____
                Charles G. Hatchett

**Verified Complaint for Declaratory
and Injunctive Relief**

## [Exhibit C – Declaration of Scott Hatchett]

1. I am an adult citizen and elector of the state of Wisconsin, residing in the Town of Whitewater at N7640 Pine Knoll Drive, Whitewater, WI 53190. I am registered to vote at the Town hall, Town of Whitewater.

2. I am the director of Joy Baptist Youth Camp on Whitewater Lake.

3. On Monday, March 27, 2006, a member of the Town Board came to the Camp and told me that three referendums had been added to the ballot for the election on April 4, 2006. The town was "dry," and the referendums were to approve the sale of alcoholic beverages in the town. The Board member stated that he was concerned that few voters knew about them

4. I called my father, Charles G. Hatchett, and informed him of my conversation with the board member and of the concern that few voters knew about the referendums.

5. Although I was not involved in the effort, I was aware that my father then prepared and mailed a number of postcards to Town residents informing them of the referendums and encouraging them to vote "no." The referendums were defeated by a substantial margin.

6. The day of the election, a Walworth County sheriff's deputy came to the camp and questioned my father about the postcards. I observed them conversing, but was not part of the conversation and the deputy did not talk to me.

7. A few days later on Friday, April 7, 2006, two plainclothes deputies came to the camp in an unmarked squad car and interviewed me in my office. They gave me one page of what looked to be a memorandum from the state elections board.

**Verified Complaint for Declaratory
and Injunctive Relief**                      -16-

8. The deputies said they were investigating a possible crime and asked if I knew who was responsible for the postcards. They stated that if I did not answer their questions, I could be in trouble for withholding evidence. After that threat, I did tell them that my father had done the mailing.

9. Thereafter, I became aware that my father sought legal counsel, and that the district attorney eventually decided not to issue charges.

10. About three weeks ago, in mid-February, 2008, I was leading a staff meeting in the main office at the camp. The Chairman of the Town Board entered the office, interrupted the meeting, and stated, "I need to speak with you in private."

11. The Chairman was upset, and when we walked outside the building, he told me that the liquor referendums would be on the ballot again for the election April 1, 2008. We were standing on a hill, and he looked down and pointed his finger at me and said something to the effect, "Listen here, we've got this referendum coming up, you better not be opposing it." He also said something to the effect that "This needs to go through" and made it clear we shouldn't oppose it. I replied, "We aren't for this."

12. The chairman then left, but in light of my experience in 2006, I was concerned about possible criminal implications if I attempted to challenge the referendums as my father had done in 2006.

13. I then contacted my father and advised him of the referendums and my conversation with the chairman.

**Verified Complaint for Declaratory
and Injunctive Relief**                      -17-

## Verification

Declaration of Scott Hatchett in Lieu of Affidavit pursuant to 28 U.S.C. § 1746:

I declare, under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Dated this 7th of March, 2008.

                                                                                /s/ Scott Hatchett

                                                                                 Scott Hatchett

**Verified Complaint for Declaratory  
and Injunctive Relief**