_____

JOHN SWAFFER, JR. and MICHAEL RASMUSSEN,

        Plaintiffs,

v.                                               Case No. 08-CV-208

THOMAS CANE, GERALD NICHOL,
MICHAEL BRENNAN, WILLIAM EICH,
PHILLIP A. KOSS, VICTOR MANIAN
and GORDAN MYSE,[1]

        Defendants.

_____

# ORDER

On March 10, 2008, plaintiff John Swaffer, Jr. ("Swaffer") filed a complaint pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief against the named defendants, who are members of Wisconsin's Government Accountability Board ("GAB"), and the Walworth County District Attorney. The complaint alleged Swaffer's First and Fourteenth Amendment rights were infringed upon by certain Wisconsin state election laws. Swaffer sought declaratory judgment and a permanent injunction barring defendants from enforcing the challenged laws, as well as costs and attorney's fees. On March 20, 2008, the court granted Swaffer's motion for a preliminary injunction pursuant to the parties' stipulation. (Order, March 20, 2008, Docket #10). On March 27, 2008, Swaffer amended his complaint to include plaintiff Michael Rasmussen ("Rasmussen"). (Docket #11). Defendants

---

[1]Because the court will grant the defendants' motion to substitute certain defendants, the court has modified the case caption accordingly.

moved to dismiss plaintiffs' amended complaint for lack of subject matter jurisdiction and for failure to state a claim, which the court denied in an order issued on December 17, 2008. The court now considers plaintiffs' motion for summary judgment.

## BACKGROUND

The parties do not dispute the material facts of this case, which the court set forth in its December 17, 2008 order:

> Swaffer is a resident of the Town of Whitewater, a so-called "dry" town in Walworth County, Wisconsin. On April 1, 2008, residents of the Town of Whitewater were asked to vote, via referendum, on whether to turn the town wet and allow liquor sales and licensing of liquor vendors. Swaffer alleges that he opposed the referendum, and wanted to mail postcards to fellow residents urging them to vote against the liquor proposals on the April 1, 2008, ballot.[2] Swaffer also wanted to make yard signs advocating against passage of the referendum. Plaintiffs estimated the cost of producing and distributing the postcards and signs to be approximately five hundred dollars. Plaintiff Rasmussen, a resident of nearby Waterford, Wisconsin, alleges that he sought to contribute to Swaffer's effort to offset the cost of producing and distributing the postcards and signs.
>
> Plaintiffs allege that these activities triggered an obligation under Wisconsin state law to file a registration statement and make certain disclosures. Specifically, Wis. Stat. §11.23 requires individuals or

---

[2]Plaintiffs included the contents of Swaffer's proposed mailer as an exhibit to their Amended Complaint, which the court reproduces:

**Side A**
Town of Whitewater Residents:
Vote NO on all liquor questions on April 1,2008
**Side B**
VOTE NO ON ALL LIQUOR SALES REFERENDUMS APRIL 1
MAINTAIN PROPERTY VALUES
HOLD DOWN PROPERTY TAXES
SAVE ON LAW ENFORCEMENT
PRESERVE THE INTEGRITY OF OUR TOWN
VOTE NO TO ALL LIQUOR QUESTIONS

(Am. Compl. Ex. A, Docket #11).

groups promoting or opposing a referendum to file a registration statement, designate a campaign depository account and treasurer, and disclose contributions and disbursements. Wis. Stat. §11.30 and Wis. Admin. Code § E1Bd 1.655 require persons who pay for, or are responsible for campaign communications to disclose their identity. Rasmussen apparently filed a registration statement, complying with the statutes. Swaffer, on the other hand, admits that he did not comply with the statutes. Instead, Swaffer commenced this action challenging the validity of the statutes on its face and as it applies to Swaffer and Rasmussen as individuals.

(Order, December 17, 2008, 2-3, Docket #31; Plaintiffs' Proposed Findings of Fact, Docket #21) (footnote added).

## ANALYSIS

To prevail on a motion for summary judgment, the moving party must first establish that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those facts that "might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party meets this initial burden, a nonmoving party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial, and may not rely on allegations or denials in the nonmoving party's pleadings. Fed.R.Civ.P. 56(e). In conducting its review, the court views all facts and draws all reasonable inferences in favor of the nonmoving party. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006).

Here, the parties do not dispute the material facts of this case, and defendants' appear to concede that the statutes plaintiffs challenge are unconstitutional as applied to the plaintiffs' circumstances. Rather, defendants oppose the scope of the remedy plaintiffs seek, arguing that a permanent injunction barring them from enforcing the challenged statutes against plaintiffs under any circumstances would be inappropriate in this case. Defendants also suggest that the court issue an order enjoining defendants from enforcing the statutes against plaintiffs only to the extent plaintiffs' campaign expenditures on future referenda are less than $1,000.00. Before addressing a possible remedy, the court considers whether Wis. Stat. §§ 11.23 and 11.30, as applied to the plaintiffs' circumstances, violate the First Amendment of the Constitution.

The First Amendment prohibits the states from enacting laws that abridge the freedom of speech, the right to peaceably assemble, or the right to petition the government to redress grievances. *See* U.S. Const. amend. I; *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 779-80 (1978) (discussing the First Amendment's applicability to the states through the Due Process Clause of the Fourteenth Amendment). Because §§ 11.23 and 11.30 each raise distinct issues under the First Amendment, the court will analyze each section separately.

**1.     Wis. Stat. § 11.23**

Plaintiffs assert that Wis. Stat. § 11.23 places unconstitutional burdens on their right, as individuals, to express their views on local and statewide referendum questions. Section 11.23 provides the following:

(1) Any group or individual may promote or oppose a particular vote at any referendum in this state. Before making disbursements, receiving contributions or incurring obligations in excess of $25 in the aggregate in a calendar year for such purposes, the group or individual shall file a registration statement under s. 11.05(1), (2) or (2r). In the case of a group the name and mailing address of each of its officers shall be given in the statement. Every group and every individual under this section shall designate a campaign depository account under s. 11.14. Every group shall appoint a treasurer, who may delegate authority but is jointly responsible for the actions of his or her authorized designee for purposes of civil liability under this chapter. The appropriate filing officer shall be notified by a group of any change in its treasurer within 10 days of the change under s. 11.05(5). The treasurer of a group shall certify the correctness of each statement or report submitted by it under this chapter.

(2) Any anonymous contribution exceeding $10 received by an individual or group treasurer may not be used or expended. The contribution shall be donated to the common school fund or to any charitable organization at the option of the treasurer.

(3) All contributions, disbursements and incurred obligations exceeding $10 shall be recorded by the group treasurer or the individual. He or she shall maintain such records in an organized and legible manner, for not less than 3 years after the date of a referendum in which the group or individual participates. If a report is submitted under s. 11.19(1), the records may be transferred to a continuing group or to the appropriate filing officer for retention. Records shall include the information required under s. 11.06(1).

(4) Each group or individual shall file periodic reports as provided in ss. 11.06, 11.19 and 11.20. Every individual acting for the purpose of influencing the outcome of a referendum shall be deemed his or her own treasurer. No disbursement may be made or obligation incurred by or on behalf of a group without the authorization of the treasurer or the treasurer's designated agents. No contribution may be accepted and no disbursement may be made or obligation incurred by any group at a time when there is a vacancy in the office of treasurer.

(5) If a group which operates as a political committee has filed a single registration statement, any report of that group which concerns activities being carried on as a political committee under this chapter

shall contain a separate itemization of such activities, whenever itemization is required.

(6) If any contribution or contributions of $500 or more cumulatively are received by a group or individual supporting or opposing the adoption of a referendum question from a single contributor later than 15 days prior to an election such that it is not included in the preprimary or preelection report submitted under s. 11.20(3), the treasurer of the group or the individual receiving the contribution shall within 24 hours of receipt inform the appropriate filing officer of the information required under s. 11.06(1) in such manner as the board may prescribe. The information shall also be included in the treasurer's or individual's next regular report. For purposes of the reporting requirement under this subsection, only contributions received during the period beginning with the day after the last date covered on the preelection report, and ending with the day before the election need be reported.

Wis. Stat. § 11.23.

The Supreme Court has recognized that compelled disclosure of campaign-related activities "can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley v. Valeo (Buckley I)*, 424 U.S. 1, 64 (1976) (citations omitted). When disclosure laws regulate the "independent expenditures made to further individuals' political speech," the court must closely scrutinize the law to ensure it comports with the First Amendment's commands. *See Davis v. Fed. Election Comm'n*, 128 S.Ct. 2759, 2774-75 (2008). To survive the court's scrutiny, "there must be a relevant correlation or substantial relation between the governmental interest and the information required to be disclosed, and the governmental interest must survive exacting scrutiny." *Id.* at 2775 (citations and internal quotation marks omitted). Exacting scrutiny requires the state have a

-6-

Case 2:08-cv-00208-JPS   Filed 03/16/09   Page 6 of 18   Document 37

compelling interest in obtaining the disclosures it seeks. *See Buckley I*, 424 U.S. at 64 n.74 (citing *NAACP v. Alabama*, 357 U.S. 449, 463 (1958)).

In support of their motion, plaintiffs argue that § 11.23 significantly burdens First Amendment activities, and fails "strict scrutiny," as plaintiffs call it, because any government interest the defendants have in enforcing § 11.23 on individuals wishing to spend over $25.00 to advocate the passage or defeat of a referendum may be achieved through less restrictive means. Plaintiffs assert that the registration, record keeping and reporting requirements of § 11.23 are onerous on individuals seeking to make their voice heard on a referendum issue. Plaintiffs further argue that the traditional interests proffered in support of election disclosure laws, including promotion of an informed electorate, preventing fraud and corruption and detecting election law violations, are not compelling when applied to individuals advocating their position on a referendum.

In opposing plaintiffs' motion, defendants appear to have opted not to argue in favor of upholding § 11.23, and defendants never explicitly put forth any governmental interests that are furthered by § 11.23. To be sure, the court is under no obligation to make the defendants' case for them. *See Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point"). However, defendants do argue that in certain circumstances, voters may have a compelling interest in knowing the identity of individuals who have both personal and financial

interests in the outcome of a referendum, and who are attempting to influence the result of that referendum. As an example, defendants posit that if plaintiffs in this case had been commercial purveyors of liquor, presumably in a neighboring town, voters would have a compelling interest in knowing about plaintiffs' attempt to influence the referendum vote.

The court finds that the disclosure requirements set forth in Wis. Stat. § 11.23 regulate plaintiffs' independent expenditures in furtherance of their political speech, and in doing so significantly encroach on plaintiffs' First Amendment interests. On its face, this section, along with its correlating sections in chapter 11 of the Wisconsin Statutes, requires any individual disbursing, receiving or incurring obligations in excess of $25.00 in a calendar year for the purpose of promoting or opposing a referendum in Wisconsin: (1) file a registration statement with a designated filing official; (2) keep a dedicated bank account; (3) refuse anonymous contributions greater than $10.00; (4) keep records of all contributions received, disbursements made and obligations incurred for at least three years after the referendum; and (5) file preelection reports and a termination statement with the GAB. *See* Wis. Stat. §§ 11.23, 11.06, 11.19, 11.20(3)(k-l). The registration statement must include the individual's name, address, the "nature of any referendum which is supported or opposed," and the name and address of the dedicated depository account. Wis. Stat. § 11.05 (2). These requirements act to inhibit the open exchange of ideas and political conversations on referendum issues, at least with respect to individual Wisconsinites, like plaintiffs, who seek to inject their

opinions into the public debate.  Therefore, § 11.23 warrant the court's exacting scrutiny.  *See generally Buckley v. Am. Constitutional Law Found., Inc. (Buckley II)*, 525 U.S. 182, 192 (1999).

Applying exacting scrutiny, the court finds that § 11.23, as currently written, fails to address the matter of a relevant correlation or substantial relation between a compelling governmental interest and the information required to be disclosed. The only interest that the state, via the defendants, has put forth is the interest of the voters knowing who is seeking to influence a referendum vote.  Indeed, the court has no doubt that the electorate's interest in knowing "where political money comes from and how it is spent," can be sufficiently compelling to warrant mandatory campaign finance disclosure laws.  *Buckley I*, 424 U.S. at 66-67.  The court also recognizes that campaign finance disclosure may meet the important goal of bringing light to political corruption, although the Supreme Court has held that the potential for corruption "simply is not present in a popular vote on a public issue." *Bellotti*, 435 U.S. at 790.

However, the court finds that the public's interest in knowing where political money is coming from and how it is spent is substantially diminished in the context of § 11.23.  Referendum questions and candidate elections may often appear on the same ballot, but they are fundamentally different.  As the Supreme Court noted, "[t]he direct participation of the people in a referendum . . . increases the need for the widest possible dissemination of information from diverse and antagonistic sources." *Bellotti*, 435 U.S. at 790 n.29 (citations and internal quotation marks omitted).  In this

-9-

Case 2:08-cv-00208-JPS   Filed 03/16/09   Page 9 of 18   Document 37

case, the referendum questions asked voters in the Town of Whitewater to weigh in on whether to keep their town dry, a question towns and states throughout the country have grappled with since the ratification of the Twenty-First Amendment of the Constitution in 1933. *See* U.S. Const. amend. XXI, § 2; *Philly's v. Byrne*, 732 F.3d 87, 93-94 (7th Cir. 1984) (upholding the constitutionality of using a referendum to regulate local sales of liquor). The government's interest in keeping the public informed of where and how the teetotalers of Whitewater are spending their money to rally support against a liquor referendum is not commensurate with the government's interest in knowing which candidates for public office those same teetotalers financially support. *See Buckley II*, 525 U.S. at 203-04 (noting that financing advocacy of ballot initiatives do not involve the same risks of corruption and fraud as financing individual candidate campaigns).

While states have "considerable leeway to protect the integrity and reliability of the [election] process," they cannot place "undue hindrances to political conversations and the exchange of ideas." *Buckley II*, 525 U.S. at 191-92. Requiring a private individual who expends as little as $26.00 to register with the state, open a dedicated bank account, keep detailed financial records for three years and file preelection reports with the state creates an undue hindrance to that individual's ability to advocate a position on a public referendum. Moreover, such disclosure requirements are not sufficiently related to the government's interest in providing the public electorate with information to pass muster under the First Amendment. *See Volle v. Webster*, 69 F.Supp. 171 (D. Me. 1999) (holding similar

Maine statute unconstitutional as applied). As a result, the court finds that § 11.23 is unconstitutional as applied to plaintiffs in this case. The court now turns to Wis. Stat. § 11.30.

**2.    Wis. Stat. § 11.30**

Plaintiffs next argue that Wis. Stat. § 11.30 is unconstitutional under the First Amendment based on the Supreme Court's decision in *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995). In *McIntyre*, the Supreme Court held unconstitutional an Ohio statute prohibiting anonymous political campaign literature. *Id.* at 357. The plaintiff in *McIntyre* had distributed leaflets at a public meeting in which the local schools superintendent was discussing a school tax levy proposal. *Id.* at 337. In the leaflets, plaintiff advocated against the tax proposal, and she left some of the leaflets unsigned. *Id.* After a complaint was lodged against the plaintiff by a supporter of the tax levy, Ohio's Elections Commission fined the plaintiff for failing to sign the leaflets in violation of an Ohio statute prohibiting anonymous political campaign literature. *Id.* at 338. In holding the statute unconstitutional, the Supreme Court emphasized the importance of anonymous publications in our national political discourse, noting that "[a]nonymity is a shield from the tyranny of the majority." *Id.* at 357. The Court found that Ohio had "not shown that its interest in preventing the misuse of anonymous election-related speech justifies a prohibition of all uses of that speech." *Id.*

The court agrees that *McIntyre* applies to this case, and directs the result with respect to § 11.30. In relevant part, § 11.30 provides the following:

> (1) No disbursement may be made or obligation incurred anonymously, and no contribution or disbursement may be made or obligation incurred in a fictitious name or by one person or organization in the name of another for any political purpose.
>
> (2)(a) The source of every printed advertisement, billboard, handbill, sample ballot, television or radio advertisement or other communication which is paid for by or through any contribution, disbursement or incurred obligation shall clearly appear thereon. This paragraph does not apply to communications for which reporting is not required under s. 11.06(2).
>
> . . .
>
> (c) Every such communication which is directly paid for or reimbursed by an individual, including a candidate without a personal campaign committee who is serving as his or her own treasurer, or for which an individual assumes responsibility, whether by the acceptance of a contribution or by the making of a disbursement, shall be identified by the words "Paid for by" followed by the name of the candidate or other individual making the payment or reimbursement or assuming responsibility for the communication. No abbreviation may be used in identifying the name of a committee or group under this paragraph.

Wis. Stat. § 11.30. The GAB have interpreted "communication" to include "any printed advertisement, billboard, handbill, sample ballot, television or radio advertisement, telephone call, and any other form of communication that may be utilized by a registrant for the purpose of influencing the election or nomination of any individual to state or local office or for the purpose of influencing a particular vote at a referendum." Wis. Admin. Code [GAB] § 1.655.

Defendants appear to concede that § 11.30, as applied to plaintiffs in this case, is unconstitutional under *McIntyre*. The court agrees. The statute in *McIntyre* prohibited persons from making general publications which were designed to promote the election of a candidate or the adoption or defeat of any issue, or from

financing political communications, unless the author's name and address were conspicuously placed in the publication or communication. *See McIntyre*, 514 U.S. at 338 n.3 (quoting Ohio Rev. Code Ann. § 3599.09(A) (1988)).

As with the Ohio statute in *McIntyre*, § 11.30 creates a broad prohibition of anonymous political speech, and the possible state interests of preventing fraud, corruption and providing the public with information on the sources of campaign financing do not apply to the type of independent activities pursued by plaintiffs. *See id.* at 350-55. The only notable difference between the two statutes is that § 11.30 requires only the name of the source be disclosed, as opposed to the author's name and address in the Ohio statute. The court does not consider this sufficient to distinguish plaintiffs' case from *McIntyre*. *See Majors v. Abell*, 361 F.3d 349, 351-55 (7th Cir. 2004) (upholding a statute that prohibited anonymous political advertisements advocating a candidate). As a result, the court finds that § 11.30, and § 1.655 of its correlative administrative rule, run afoul of the First Amendment as applied to plaintiffs in this case.

### 3. The Remedy

Having found both § 11.23 and § 11.30 of the Wisconsin Statutes unconstitutional as applied to plaintiffs in this case, the court now turns to plaintiffs' requested relief. Plaintiffs' summary judgment motion includes a proposed order which would permanently enjoin defendants from enforcing §§ 11.23, 11.30 and Wis. Admin. Code [GAB] § 1.655, and order that defendants expunge any reports and the registration statement filed by Rasmussen. The proposed order also seeks a

declaration that the aforementioned statutory provisions are unconstitutional on their face and as applied to plaintiffs.

Defendants argue that the injunctive relief plaintiffs seek is not appropriate in this case because it would allow plaintiffs to conduct anonymous political activities beyond the scope of *McIntyre*. Defendants assert that they may have a compelling interest to prohibit anonymous campaigning on future referenda in which plaintiffs have a personal interest. Defendants also assert that it may have a compelling interest in enforcing these sections against plaintiffs if they spend "large amounts of money" on a referendum campaign. In the alternative, defendants ask that the court limit the application of any permanent injunction to plaintiffs' future expenditures of $1,000.00 or less on a referendum.

In reply, plaintiffs assert that defendants' proposed limitation would require the court to effectively rewrite Wisconsin state law, and that any limited interpretation of §§ 11.23 and 11.30 made by the court would not be binding on Wisconsin state courts. Plaintiffs also argue that defendants have not shown that their proposed future applications of §§ 11.23 and 11.30 would be constitutional.

Before the court may grant a permanent injunction, a plaintiff seeking such relief must satisfy the following four factors:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted). Plaintiffs have not met this burden. In fact, plaintiffs' briefs do not even address these factors, or the appropriateness of permanent injunctive relief in this case. Without a showing by plaintiffs of their entitlement to permanent injunctive relief, the court is unable to exercise its discretion in granting such relief. *See generally e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 603-04 (7th Cir. 2007) (requiring district courts explain their reasoning for issuing a permanent injunction). Moreover, defendants' request that the court construct a permanent injunction effectively rewriting Wisconsin statutory law is beyond the court's power of under Article III of the Constitution. *See Wisconsin Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1186-87 (7th Cir. 1998) (holding that district courts may not prescribe through an injunction how a state must deal with future disputes arising under a statute).

On plaintiffs' entitlement to declaratory relief, the court has set forth its reasoning why §§ 11.23 and 11.30 are unconstitutional as applied to plaintiffs' circumstances. However, plaintiffs assert that both provisions are also unconstitutional on their face. In determining whether statutory provisions are facially overbroad or vague, the court must find that the provisions reach a substantial amount of constitutionally protected conduct. *See Village of Hoffman Estates v, Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982). If the court finds they do, the court must then determine whether the statute is incapable of any valid application. *See id.* at 494 n.5. Because of the relatively unsettled and evolving nature of First Amendment jurisprudence in the area of campaign finance

-15-

laws, and because it appears that the Wisconsin Supreme Court has not addressed the scope of these statutory provisions, the court declines to reach the issue of whether §§ 11.23 and 11.30 are unconstitutional on their face. *See Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003) (holding that courts should decide as-applied constitutional challenges before facial challenges); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 683 (7th Cir. 1998) (holding that if plaintiff succeeds on an as-applied challenge, district court need not consider a facial challenge).

Plaintiffs also seek to have all records Rasmussen filed with state or local officials pursuant to §§ 11.23 and 11.30 expunged. However, the court's equitable power to order expungement of records is narrow, and most often sought when a conviction is overturned on constitutional grounds. *See United States v. Flowers*, 389 F.3d 737, 739 (7th Cir. 2004) (applying a balancing test for expunging of criminal records); *Reyes v. Supervisor of Drug Enforcement Admin.*, 834 F.2d 1093 (1st Cir. 1987); *Bromley v. Crisp*, 561 F.2d 1351, 1364 (10th Cir. 1977) (holding that court's equitable power to expunge record is "reserved for extreme cases"). Because plaintiffs have not shown that they have attempted to exhaust state administrative remedies to remove any applicable records defendants may retain, the court declines to order defendants to remove such records today.

Finally, plaintiffs' amended complaint seeks costs and attorneys' fees under 42 U.S.C. § 1988. In general, a prevailing party is entitled to costs, but not attorneys' fees. *See* Fed.R.Civ.P. 54(d). However, the Civil Rights Attorney's Fees

-16-

Awards Act of 1976, as amended, 42 U.S.C. § 1988, grants the court discretion to award reasonable attorneys' fees to the prevailing party in an action brought pursuant to 42 U.S.C. § 1983. A prevailing party is one that succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (citation omitted) (interpreting 42 U.S.C. § 1988). Although the court has not granted all the relief plaintiffs sought in this case, the court considers plaintiffs to be prevailing parties under 42 U.S.C. § 1988(b), and will allow plaintiffs to seek reasonable attorneys' fees as part of its costs. *See King v. Illinois State Bd. of Elections*, 410 F.3d 404, 416 (7th Cir. 2005) (noting that "prevailing civil rights plaintiffs are entitled to their attorneys' fees as a matter of course"). In seeking attorneys' fees and costs, plaintiffs are directed to follow the court's procedures for filing a bill of costs. *See* Civil L.R. 54.1 and 54.2.

The court will also deny as moot plaintiffs' motion to amend their complaint to include the clerk of the Town of Whitewater, Wisconsin. (Docket #19). In light of the court's decision not to order expungement, plaintiffs have not demonstrated that the clerk is an interested party, and the addition of a new party-defendant at this late hour in litigation would only cause needless delay. The court will, however, grant defendants' motion to substitute certain defendants sued in their official capacity as members of the GAB. *See* Fed.R.Civ.P. 25(d).

Accordingly,

-17-
Case 2:08-cv-00208-JPS   Filed 03/16/09   Page 17 of 18   Document 37

**IT IS ORDERED** that plaintiffs' motion for leave to file an amended complaint (Docket #19) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that defendants' motion to substitute parties (Docket #32) be and the same is hereby **GRANTED**; Victor Manian and Gordan Myse are hereby substituted for David Deininger and James Mohr.

**IT IS FURTHER ORDERED** that plaintiffs' motion for summary judgment (Docket #20) be and the same is hereby **GRANTED** in part; it is hereby **DECLARED** that Wis. Stat. §§ 11.23, 11.30 and Wis. Admin. Code [GAB] § 1.655 are unconstitutional as applied to plaintiffs.

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 16th day of March, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

-18-
Case 2:08-cv-00208-JPS   Filed 03/16/09   Page 18 of 18   Document 37