United States District Court
Eastern District of Wisconsin
Milwaukee Division

| | |
|---|---|
| **John Swaffer, Jr.** and **Michael Rasmussen**, *Plaintiffs*, v. **Thomas Cane**, **Gerald Nichol**, **Michael Brennan**, **William Eich**, **Phillip A. Koss**, **Victor Manian**, and **Gordan Myse**, in their official capacities, *Defendants*. | Civil Action No. 2:08-cv-00208-JPS<br><br>Plaintiffs' Memorandum in Support of Motion For Attorneys' Fees and Expenses |

**Plaintiffs' Memorandum in Support of
Motion for Attorneys' Fees and Expenses**

Plaintiffs, John Swaffer, Jr. and Michael Rasmussen, by counsel, and in support of their Motion for Attorneys' Fees and Expenses, submit the following memorandum of law.

**I.      Plaintiffs Are Entitled to Attorneys' Fees and Costs as the Prevailing Party in this Litigation.**

As this Court noted in its Order granting Plaintiffs' Motion for Summary Judgment, Plaintiffs in this matter are prevailing parties entitled to attorneys' fees under Title 42 U.S.C. § 1988. *Swaffer v. Cane*, No. 08-CV-208 at 16-17 (Mar. 16, 2009) (Doc. # 37). This Court granted summary judgment in favor of Plaintiffs declaring that both Wis. Stat. § 11.23 the "PAC-style requirements" and Wis. Stat. § 11.30 the "disclaimer requirement" are unconstitutional as

1

applied to the Plaintiffs in this case. *Id.* at 11, 12. Because Mr. Swaffer and Mr. Rasmussen obtained actual relief on the merits of their claims which "materially alters the legal relationship between the parties by modifying the defendants behavior in a way that directly benefits the plaintiff," they are prevailing parties presumptively entitled to an award of attorneys' fees. *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992).

**II.     Federal Courts Employ the Lodestar Calculation to Determine Appropriate Attorneys' Fees Under § 1988.**

Applicants bear the burden of proving a reasonable attorneys' fee. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). They have established their *entitlement* to an award and must establish the *amount* to which they are entitled. *Id*. The Supreme Court has adopted the lodestar as the measure of the reasonable fee to which a prevailing party is entitled under § 1988. *City of Burlington v. Dague*, 505 U.S. 557, 561 (1992) ("The lodestar figure has . . . become the guiding light of our fee-shifting jurisprudence."). The lodestar figure "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.

In *Blum v. Stenson*, the U.S. Supreme Court stated that the figure which results from the lodestar calculation is more than a rough guess or approximation of the final award to be made: "when the applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is *presumed* to be the reasonable fee . . . ." *Blum*, 465 U.S. 866, 897 (1984) (emphasis added); *see also City of Burlington,* 505 U.S. at 561 ("We have established a 'strong presumption' that the lodestar represents the 'reasonable fee.'"); *King v. Bd. of Regents of the Univ. of Wisc. Sys.*, 748 F. Supp. 686, 689 (E.D. Wisc. 1990) ("when the fee applicant has carried his burden of proving that the number of hours and the hourly rate are

2

reasonable, then the lodestar amount is presumed to be a reasonable fee.").

### A. The First Prong of the Lodestar Calculation Is Determined by Establishing the Number of Hours Reasonably Expended on the Litigation.

To determine the first prong of the lodestar calculation – the number of hours reasonably expended on the case – applicants "should submit evidence supporting the hours worked and the rates claimed." *Hensley*, 461 U.S. at 433. An applicant, however, "is not required to record in great detail how each minute of his time was expended." *Id.* at 437 n.12. He need only "identify the general subject matter of his time expenditure." *Id*.

Fee applicants should exercise "billing judgment." *Hensley*, 461 U.S. at 437. In this regard, "hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* at 434. Thus, counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary," and the reviewing court should similarly exclude from the "fee calculation hours that were not 'reasonably expended.'" *Id.* The Tenth Circuit has described this process as being "much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).

The Plaintiffs' attorneys have already reviewed their own billing records to exclude excessive, redundant, or otherwise unnecessary hours. Most of the substantive work was performed by Clayton Callen and Jeffrey Gallant, who claim roughly 280 hours. Bopp Declaration Exhibit C. Lead counsel James Bopp billed less than 4 hours, mostly to provide access to his considerable expertise to his associates. *Id*. Local counsel Michael Dean, provided

local expertise and connections. Plaintiffs' counsel has excluded 16.5 hours worth $3807.10 for work that was deemed, in the exercise of billing judgment, to be redundant, unnecessary, or excessive. Bopp Declaration Exhibits C and D.

Plaintiffs' counsel's hours are reasonable in light of the complicated First Amendment issues this case presented and the additional work required to successfully defeat Defendants' Motion to Dismiss the case (Doc. # 15) as moot after agreeing to a preliminary injunction and without securing relief on the merits of the Plaintiffs' claims. *See* Plaintiffs' Memorandum in Response to Defendants' Motion to Dismiss (Doc. # 18). The total hours expended were reasonable for such litigation and are supported by contemporaneous time records as shown by the declarations of James Bopp, Jr. and Michael Dean. Michael Crooks has reviewed the pleadings, preliminary injunction, motion to dismiss and summary judgment briefs to determine the reasonableness of Plaintiffs' counsels' hours and has opined that the hours expended are reasonable for the present litigation. Declaration of Michael Crooks at ¶ 8 (Exhibit 2 to Plaintiff's Motion for Attorneys' Fees). Because the hours claimed are properly supported and reasonable they should not be further reduced.

**B.      The Hours Claimed Should Not Be Reduced for Limited Success.**

In *Hensley*, the Supreme Court established a two–step analysis for determining whether the hours component of the lodestar should be reduced for limited success. In the first step, hours spent on unrelated, unsuccessful claims should be identified and eliminated. "[H]ours spent on an unsuccessful claim might be unrecoverable where that 'claim . . . is distinct in all respects from [plaintiff's] successful claims. . . .'" *Nanetti v. University of Illinois at Chicago*, 944 F.2d 1416, 1419 (7th Cir. 1991) (citation omitted). In the second step, "'[h]aving eliminated all

4

Case 2:08-cv-00208-JPS   Filed 04/06/09   Page 4 of 13   Document 42

unsuccessful, unrelated claims, the district court should tailor the compensable hours for related claims to reflect "the significance of the overall relief obtained."'" *Id.* at 1420 (quoting *Jackson v. Illinois Prisoner Review Bd.*, 856 F.2d 890, 894 (7th Cir.1988) (in turn quoting *Hensley*, 461 U.S. at 435)).

Under the first step of the analysis, time spent any unsuccessful claims that are "unrelated" to successful claims should be eliminated from the lodestar. "[I]f the plaintiff has succeeded on only some of his or her claims for relief, the plaintiff may not recover fees for time expended on 'distinctly different claims for relief that are based on different facts and legal theories' than the successful claims." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983) (citation omitted). Hours not compensable are those that were expended in pursuit of an unsuccessful claim and that claim must be unrelated to a successful claim. There are no unsuccessful unrelated claims for relief [1] here.

> [T]he starting point for separating an *un*related, unsuccessful claim from a related, unsuccessful claim is to determine whether a particular unsuccessful claim shares a "common core of facts" with the successful claim or is based on a "related legal theory." [footnote, citation omitted]. We believe a useful tool for making this determination is to focus on whether the claims seek relief for essentially the same course of conduct. Under this analysis, an unsuccessful claim will be

---

[1]An initial difficulty is identifying the "claims" presented. *See Mary Beth G*, 723 F.2d at 1279 n.15 (recognizing that in the attorneys fees context "courts have used the term 'claim' . . . less precise[ly] than in other areas of the law."). The court noted that the Federal Rules describe a claim as "'the aggregate of operative facts which give rise to a right enforceable in the court,'" *id.* (citation omitted), while in the attorney's fee context, claims are "often loosely defined in terms of grounds or theories of recovery or in terms of particular 'wrongs' bottomed on the same legal theory." *Id.* Using "*Hensley*'s emphasis on 'claim *for relief*,'" the Seventh Circuit notes, "suggests a useful method for determining the 'relatedness' of claims." *Id.* (second emphasis added). Hence, the analysis provided by the Seventh Circuit in *Mary Beth G* and used here determines whether two claims are related, and in so doing provides guidance on what constitutes a "claim" for purposes of attorney's fees, but it does not determine whether a claim is successful or not for purposes of a fee petition.

5

> *un*related to a successful claim when the relief sought on the successful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gives rise to the injury on which relief granted is premised.

*Id*. Here, both Plaintiffs claimed that the PAC– style requirements (Wis. Stat. § 11.23) effected unconstitutional burdens on their First Amendment rights—each wanted to engage in a course of conduct that brought them under fear that they would have to comply with onerous regulation as a PAC (and Mr. Rasmussen complied with the applicable requirements) and Mr. Swaffer claimed that the disclaimer requirement (Wis. Stat. § 11.30) was an unconstitutional burden on his political speech. *See* Amended Verified Complaint ("AVC") at ¶ 12-13 (claiming that §§ 11.23 and 11.30 deprive Mr. Swaffer of his First Amendment rights); ¶ 23 (claiming that § 11.23 deprives Mr. Rasmussen of his First Amendment rights).

Under *Mary Beth G*'s analysis, the case involves two unrelated claims, as Mr. Swaffer and Mr. Rasmussen won relief for injuries arising from two courses of conduct: Mr. Swaffer wanted to pay for and disseminate yard sales and flyers, and Mr. Rasmussen wanted to help him pay for them. Two statutes stood in the way of Mr. Swaffer and one of these statutes stood in Mr. Rasumssen's way. Both plaintiffs sought declaratory judgments that the statutes were unconstitutional and permanent injunctions barring their enforcement against them for their activities in the 2008 Whitewater referendum election and materially similar future activities. Mr. Rasmussen additionally sought expungement of the registration statement he filed as required under § 11.23. This Court granted declaratory but not injunctive relief on both of Plaintiffs' claims, declaring the challenged statutes unconstitutional as applied but not facially, and did not order the expungement of the records of Mr. Rasumssen's filings. *see* Order at 14-17.

Mr. Swaffer's injury on which the relief provided by this Court was premised arose from

6

his desire to disseminate the flyers and yard signs, while Mr. Rasmussen's injury arose from his desire to contribute to Mr. Swaffer's efforts, so under *Mary Beth G*, the claims were unrelated. But this is of no import to their request for fees because *both claims were successful*, i.e., both secured relief from the injury that allowed them to engage in a course of conduct unhindered by the statutes.

Alternatively, if the Court were to consider each *request for discrete relief* as constituting separate *claims*, the time spent on the "unsuccessful claims" for injunctive relief and expungement is compensable because it is "[w]ork on unsuccessful, unrelated claims for relief [that] cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Mary Beth G*, 723 F.2d at 1279. Here, in contrast, any time spent seeking permanent injunction and expungement is "time that would have been spent in connection with the successful claims [, i.e., the "claims" for declaratory judgment,] even if the unsuccessful claims [for injunctions and expungement] had not been brought." *Decker v. U.S. Dept. of Labor*, 564 F. Supp. 1273, (E.D. Wisc. 1983). Moreover, all of the work for which Plaintiffs request compensation were spent in pursuit of the ultimate successful result achieved if for no other reason than counsel spent no separable, discrete time pursuing permanent injunctions or expungment. *See*, *e.g.*, Order at 14-15, 16. Here, there are no unsuccessful, unrelated claims for which counsel's time should be excluded from the award.

In the second step of the *Hensley* analysis, the court asks whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." 461 U.S. at 434. The Plaintiffs' purpose in bringing suit was to allow them to contribute and spend their own funds to urge their fellow residents to vote against a local referendum

7

without having to shoulder the burdens of a PAC, and, in Mr. Swaffer's case, to do so without well-founded fear of retribution for doing so. The court's decision provides that exact relief. Therefore, Plaintiffs effectively achieved all of their litigation goals.

In determining the degree of success, "the issue . . . is not whether [a Plaintiff] could have done even better, but whether his expenditure on attorney's fees was reasonable in relation to the difficulty, stakes, and outcome of the case." *Partington v. Broyhill Furniture Industries, Inc.*, 999 F.2d 269, 273 (7th Cir. 1993) (citations omitted). While Plaintiffs did not secure all the relief they requested, they secured an excellent result, fully allowing them to exercise their First Amendment rights unhindered by the statutes. That Plaintiffs' counsel aimed higher in terms of relief "[was] not improvident," *id.*, as "[a] lawyer who figures out the likeliest outcome in his favor, and aims only for that, is likely to fall short." *Id.* at 274. As for the time spent securing the successful result, as noted above, very little if any of the time spent on the litigation can be attributed to the requests for relief that were not granted, weighing against any claim that Plaintiffs "could have spent less without jeopardizing [their] prospects for winning what [they] did win]." *Id.*

### C. Plaintiffs Have Established a Reasonable Hourly Rate to Which Their Attorneys Are Entitled for Their Services.

The second prong of the lodestar calculation requires that the court determine the attorney's reasonable hourly rate. In order to determine the reasonable hourly rate the fee applicant should utilize "the prevailing market rates in the relevant community . . . ." 465 U.S. 866, 895 (1984) . The objective is "to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Steinlauf v. Continental Ill.*

8

*Corp.*, 962 F.2d 566, 568 (7th Cir. 1992).

In order to support its claimed rates, "the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11[2]. "In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Norcross v. Bd. of Educ. of the Memphis City Schs.*, 611 F.2d 624, 638 (6th Cir. 1979). Further, even though a judge retains discretion to lower the requested rates, the Seventh Circuit has recognized "that a particular attorney may have special skills or experience which raise the value of his time above the value of another attorney's time." *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 767 (7th Cir. 1982). Specialists, it should be noted, "will usually charge more for performing services in his area of expertise than a general practitioner will charge for performing similar services." *Id.* at 769. Once a rate has been determined in this manner, it "is normally deemed to be reasonable, and is referred to . . . as the market rate." *Blum*, 465 U.S. at 895 n.11.

Here, Plaintiffs have complied with the above standards by requesting rates ranging from $199 to $366, depending upon the experience and specialization of the particular attorney. These

---

[2] Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.

*Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

9

rates are at or below the level which these attorneys typically charge, and are reasonable and appropriate for attorneys of such qualifications and experience in the Eastern District of Wisconsin market. *See* Declarations of James Bopp, Jr., and Michael Crooks. Mr. Bopp and his firm are nationally recognized experts whose paying clients pay substantially higher rates for similar litigation. Bopp Declaration at ¶ 9. The bulk of the claimed hours were billed by Clayton Callen, a relatively new attorney, and Jeffrey Gallant, an attorney with experience that has included the litigation of challenges to campaign finance laws in several states. Further, the rates charged by Plaintiffs' counsel accurately reflect the training, background, experience and skill (including the Bopp firm's special expertise) of the various attorneys who contributed to the excellent results in this case.

That the rates for each individual attorney are consistent with the market rate for the Eastern District of Wisconsin is further demonstrated by Altman Weil 2007 and 2008 "Survey of Law Firm Economics." Bopp Declaration, Exh. F. The rates charged by the members of the Bopp firm are consistent with those of attorneys in the upper quartile for attorneys with similar experience. The rates charged for those in the upper quartile rather than the median rates are appropriate for the Bopp firm because it is a small boutique firm with vast experience in election–related free speech cases. Bopp Declaration at ¶ 2-4. Based on both Mr. Crook's expert opinion and the results of the Altman Weil survey, the rates requested by counsel are consistent with the market rate for the Eastern District of Wisconsin.

**III.    Under 42 U.S.C. § 1988, a Prevailing Party Is Entitled to Recover Reasonable Costs and Expenses as Well as Attorneys' Fees.**

"The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons

10

with civil rights grievances." *Hensley*, 461 U.S. at 429. To effect this purpose, several courts have noted that § 1988 is to be liberally construed. The reasoning behind a liberal construction of § 1988 is that the Act seeks to shift the cost of the winning party's lawyer to the losing party. Thus, while § 1988(b) refers specifically only to "a reasonable attorney's fee," the case law overwhelmingly supports the proposition that "attorney's fee" includes out-of-pocket expenses in preparation for trial. *Daly v. Hill*, 790 F.2d 1071, 1082-84 (4th Cir. 1986); *Henry v. Wevermeier*, 738 F.2d 188, 192 (7th Cir. 1984). These costs include those expenses "which are normally charged to a fee-paying client" and include "reasonable photocopying, paralegal expenses, and travel and telephone costs." *Norcross v. Bd. of Educ. of the Memphis City Schs.*, 611 F.2d 624, 639 (6th Cir. 1979).

Here, the costs and expenses claimed by Plaintiffs' attorneys are fully compensable. Plaintiffs asked for those expenses that are normally charged to fee paying clients, i.e. long distance telephone, travel, fax and photocopying expenses and docketing fees. Bopp Declaration Exhibits C and D. Further, just as with its hours, counsel has exercised billing judgment and eliminated $78 worth of expenses from Plaintiffs' request. Thus, Plaintiffs should be awarded the costs and expenses claimed in the amount of $3435.47 for lead counsel and $156.61 for local counsel.

**IV.    Plaintiffs Are Entitled to Attorney Fees for Work on the Fee Petition**.

"An award of attorney's fees under § 1988 should include an award for time spent establishing their entitlement to fees." *Decker*, 564 F. Supp. at 1281 (*citing Bond v. Stanton*, 630 F.2d 1231, 1236 (7th Cir. 1980)). Moreover, to disallow such fees "'would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the

11

time reasonably spent in establishing and negotiating his rightful claim to the fee.'" *Jones v. MacMillan Bloedel Containers, Inc.*, 685 F.2d 236, 239 (8th Cir. 1982) (quoting *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978)).

Here, in addition to the hours spent on the case-in-chief, Plaintiffs' counsel has spent an additional 23.20 hours preparing the fee petition and supporting documents. Bopp Declaration Exhibit D; Dean Declaration Exhibit C. This reasonable number of hours spent preparing the fee petition and supporting documents should be compensated in order to effectuate the purposes of the fee shifting statutes.

**Conclusion**

Because of the paramount role of the freedom of speech in our republican democracy, the vindication of First Amendment rights is inherently valuable, not only to the litigant, but to society as a whole. For the foregoing reasons, the Court should award Plaintiffs the costs and attorneys' fees incurred in this case for their successful claims as set forth in their Motion for Attorneys' Fees and Expenses.

Dated: April 6, 2009
Respectfully submitted,

  /s/ Jeffrey P. Gallant
James Bopp, Jr., Ind. #2838-84
Jeffrey P. Gallant, Va. #46876
Clayton J. Callen, Mo. #59885
Bopp, Coleson & Bostrom
1 South Sixth Street
Terre Haute, IN 47807-3510
812/232-2434 telephone
812/234-3685 facsimile
*Lead Counsel for Plaintiff*

Michael D. Dean
20975 Swenson Drive
Suite 125
Waukesha, WI 53186
262/798-8044 telephone
262/798-8045 facsimile
*Local Counsel for Plaintiff*